J-S11044-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| IN RE: ADOPTION OF S.J.B. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.A.S., NATURAL MOTHER | : : | No. 1637 WDA 2019 |

Appeal from the Order Entered September 24, 2019
in the Court of Common Pleas of Cambria County Orphans' Court at
No(s): 2019-390 IVT

| IN RE: ADOPTION OF S.D.B. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.A.S., NATURAL MOTHER | : : | No. 1638 WDA 2019 |

Appeal from the Order Entered September 24, 2019
in the Court of Common Pleas of Cambria County Orphans' Court at
No(s): 2019-391 IVT

| IN RE: ADOPTION OF: S.A.B. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.A.S., NATURAL MOTHER | : : | No. 1639 WDA 2019 |

Appeal from the Order Entered September 24, 2019
in the Court of Common Pleas of Cambria County Orphans' Court at
No(s): No. 2019-392 IVT


BEFORE: NICHOLS, J., MURRAY, J., and MUSMANNO, J.

J-S11044-20

MEMORANDUM BY MUSMANNO, J.:                    FILED JUNE 11, 2020

J.A.S. ("Mother") appeals from the Order granting the Petitions filed by the Cambria County Children and Youth Services ("CYS" or the "Agency") seeking to involuntarily terminate her parental rights to her minor children, S.A.B. (a female born in August 2013),[1] S.D.B. (a male born in June 2015), and S.J.B. (a female born in August 2016) (collectively, "the Children"), pursuant to the Adoption Act, 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b).[2] We affirm.

CYS initiated services with regards to the Children in May 2017, following a report that the Children were left unsupervised at their home. On June 12, 2017, CYS filed dependency Petitions with regard to the Children. Following a hearing, the Children were removed from the home and placed into foster care. The trial court adjudicated the Children dependent on July 19, 2017. Mother and Father underwent a psychological evaluation in August 2017. The trial court held a series of permanency review hearings on

_____

[1] The trial court's Opinion and Order erroneously stated that S.A.B. was born in August of 2010, but S.A.B.'s birth year is properly noted during the September 6, 2019 hearing. See Opinion and Order, 9/24/19, at 1; N.T., 9/6/19, at 7.

[2] In its Order, the trial court also involuntarily terminated the parental rights of the Children's father, M.T.B. ("Father"). Father has not filed any appeals, nor has he filed a brief in this appeal.

- 2 -

November 29, 2017; May 16, 2018; August 24, 2018; and April 7, 2019. At the August 24, 2018 hearing, the trial court set the Childrens' goal to adoption.

On April 16, 2019, CYS filed Petitions to involuntarily terminate the parental rights of Mother and Father to the Children. On June 6, 2019, the trial court appointed Suzann M. Lehmier, Esquire ("Attorney Lehmier"), as legal interest counsel and guardian ad litem ("GAL") for the Children.[3] The trial court also appointed independent legal counsel to represent Mother and Father.

On September 6, 2019, the trial court held an evidentiary hearing on the termination Petitions. CYS presented the testimony of Carol Crouse ("Crouse"), the CYS caseworker assigned to the family since November 2018; David Geller ("Geller"), a family resource specialist at Independent Family Service, Inc. ("IFS"); and Dennis Kashurba ("Kashurba"), a licensed psychologist who testified as a stipulated expert in psychology. See N.T.,

_____

[3] Based on the Children's respective ages of six, four, and three, the trial court found that they had an inability to understand the termination proceedings. See Trial Court Opinion and Order, 9/24/19, at 2. The trial court perceived no conflict between the best interests of the Children and their legal interests, and appointed Attorney Lehmier to serve as both legal interest counsel and GAL for the Children. Id.; see In re T.S., 192 A.3d 1080 (Pa. 2018) (holding that the trial court did not err in allowing the children's GAL to act as their sole representative during the termination proceeding because, at two and three years old, they were incapable of expressing their preferred outcome). The Children's legal interest counsel/GAL stated at the termination hearing that the termination of Mother's parental rights is in the best interests of the Children. N.T., 9/6/19, at 143-44.

9/6/19, at 6, 68, 84-85. Mother was present, and testified on her own behalf. Id. Father was not present, but was represented by counsel. Id. at 7.

On September 24, 2019, the trial court entered an Order granting the Petitions to involuntarily terminate Mother's and Father's parental rights to the Children, pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). On October 30, 2019, Mother filed three separate Notices of Appeal, and simultaneous Concise Statements of Matters Complained of on Appeal.[4] On December 4, 2019, this Court, acting sua sponte, consolidated the appeals.

Mother raises the following issues for our review:

1. Whether [] Mother alleviated the conditions which led to the Agency's filing of a Petition to terminate her parental rights[?]

2. Whether [CYS] had met its burden of terminating Mother's parental rights with clear and convincing evidence[?]

Brief for Mother at 4.

In her first claim, Mother argues that the trial court erred in terminating her parental rights because the evidence presented at the hearings was insufficient to support the terminations. Id. at 7. Mother acknowledges that

_____

[4] Mother also filed accompanying Motions to Appeal Nunc Pro Tunc, arguing that Mother's placement in the drug rehabilitation facility hindered her ability to file timely Notices of Appeal from the termination Order. On October 31, 2019, the trial court granted Mother's Motions to appeal nunc pro tunc.

her incarceration[5] has presented difficulties in parenting the Children. Id. at 10. Mother recognizes that she was unable to attend multiple scheduled visits with the Children because of her incarceration, but argues that CYS "did not afford her visits with the [C]hildren while she was incarcerated or in a drug rehabilitation facility." Id. at 11-12. Mother asserts that, even while incarcerated, she would regularly send the Children cards and letters, sought to work with the IFS program, and took parenting classes. Id. at 12. Further, Mother states that when she was not incarcerated, in drug rehabilitation, or subject to an active warrant, she would participate in visits with the Children and regularly talk to the Children via telephone. Id. Moreover, Mother asserts that she has recognized the severity of her need for drug rehabilitation, and is taking steps to remedy the issue through her stay at the drug rehabilitation facility. Id. Finally, Mother argues that even if the statutory requirements of section 2511 have been met, the termination of her parental rights would not serve the needs and welfare of the Children based on her parental bond with the Children. Id. at 12-13.

> Regarding our review of termination orders, we have stated as follows:
>
> [E]ven where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead

---

[5] Mother testified that she has been in and out of prison and inpatient drug rehabilitation facilities from September 2017 to the date of the termination hearing in September 2019, excepting a four-month period from December 2018 to April 2019. N.T., 9/6/19, at 111-12.

we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

In re Adoption of S.P., 47 A.3d 817, 826-27 (Pa. 2012) (citation omitted). The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. In re R.N.J., 985 A.2d 273, 276 (Pa. Super. 2009).

This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a), along with consideration of section 2511(b). See In re B.L.W., 843 A.2d 380, 384 (Pa. Super. 2004). The trial court considered section 2511(a)(1), (2) and (b), which provides, in relevant part, as follows:

§ 2511. Grounds for involuntary termination

(a) General rule.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

* * *

(b) Other considerations.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (2), (b).

With respect to subsection 2511(a)(1), our Supreme Court has held as follows.

Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

In re Adoption of Charles E.D.M., 708 A.2d 88, 92 (Pa. 1988).

Further, this Court has stated:

the trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

In re B.,N.M., 856 A.2d 847, 854-55 (Pa. Super. 2004) (citations omitted).

To satisfy the requirements of section 2511(a)(2), the moving party must produce clear and convincing evidence regarding the following elements: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such

incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. See In re Adoption of M.E.P., 825 A.2d 1266, 1272 (Pa. Super. 2003). The grounds for termination of parental rights under section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties. In re A.L.D., 797 A.2d 326, 337 (Pa. Super. 2002).

Our Supreme Court has addressed the termination of parental rights of incarcerated parents under section 2511(a)(2), stating that "incarceration, while not a litmus test for termination, can be determinative of the question of whether a parent is incapable of providing essential parental care, control, or subsistence." In re Adoption of S.P., 47 A.3d at 830 (citation and internal quotation marks omitted). Particularly, "the length of the remaining confinement can be considered as highly relevant to whether the conditions and causes of the incapacity … cannot[,] or will not[,] be remedied by the parent, sufficient to provide grounds for termination pursuant to 23 Pa.C.S.[A.] § 2511(a)(2)." Id. (internal quotation marks omitted).

This Court has stated that the focus in terminating parental rights under section 2511(a) is on the parent, but it is on the child pursuant to section 2511(b). See In re Adoption of C.L.G., 956 A.2d 999, 1008 (Pa. Super.

2008). In reviewing the evidence in support of termination under section 2511(b), our Supreme Court has stated as follows.

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.[A.] § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." In re K.M., 53 A.3d 781, 791 (Pa. Super. 2012). In In re E.M., [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. In re K.M., 53 A.3d at 791.

In re: T.S.M., 71 A.3d 251, 267 (Pa. 2013).

When evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, section 2511(b) does not require a formal bonding evaluation." In re Z.P., 994 A.2d 1108, 1121 (Pa. Super. 2010) (internal citations omitted). Although it is often wise to have a bonding evaluation and make it part of the certified record, "[t]here are some instances … where direct observation of the interaction between the parent and the child is not necessary and may even be detrimental to the child." In re K.Z.S., 946 A.2d 753, 762 (Pa. Super. 2008).

A parent's abuse and neglect are likewise a relevant part of this analysis:

> concluding a child has a beneficial bond with a parent simply because the child harbors affection for the parent is not only dangerous, it is logically unsound. If a child's feelings were the dispositive factor in the bonding analysis, the analysis would be

> reduced to an exercise in semantics as it is the rare child who, after being subject to neglect and abuse, is able to sift through the emotional wreckage and completely disavow a parent.... Nor are we of the opinion that the biological connection between [the parent] and the children is sufficient in of itself, or when considered in connection with a child's feeling toward a parent, to establish a de facto beneficial bond exists. The psychological aspect of parenthood is more important in terms of the development of the child and [his or her] mental and emotional health than the coincidence of biological or natural parenthood.

In re K.K.R.-S., 958 A.2d 529, 535 (Pa. Super. 2008) (internal citations and quotation marks omitted). Thus, the court may emphasize the safety needs of the child. See In re K.Z.S., 946 A.2d at 763 (affirming involuntary termination of parental rights, despite existence of some bond, where placement with mother would be contrary to child's best interests).

"[A] parent's basic constitutional right to the custody and rearing of … her child is converted, upon the failure to fulfill … her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." In re B.,N.M., 856 A.2d 847, 856 (Pa. Super. 2004) (internal citations omitted). This Court has explained that a parent's own feelings of love and affection for a child, alone, do not prevent termination of parental rights. In re Z.P., 994 A.2d at 1121. It is well-settled that "we will not toll the well-being and permanency of [a child] indefinitely." In re Adoption of C.L.G., 956 A.2d at 1007 (citing In re Z.S.W., 946 A.2d 726, 732 (Pa. Super. 2008) (noting that a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting.")).

In considering section 2511(a)(1), (2), and (b), the trial court stated as follows:

15. The [trial court] recognizes that [Mother] is also attending drug and alcohol [rehabilitation], a 13-month program, a very restrictive program, which has a six-month aftercare plan. If she completes it, she will have come a long way. However, that is a big "if" based upon her prior history. Secondly, how long do these [C]hildren have to wait for permanency? It has already been 27 months since placement[,] and they need and deserve permanency.

16. These parents were each given an additional six months to show progress and neither did. It was only after the [P]etitions were filed that [Mother] began attending [inpatient drug rehabilitation]. How long will these positive efforts last? It is obvious to the [trial court] that these parents love their [C]hildren, but that love has not translated into changing their behavior long term. As noted, CYS even kept providing services after the goal change to adoption. It didn't result in any positive change.

17. [CYS] has established a legal basis for terminating the parental rights of [Mother] and [Father].

\* \* \*

19. The testimony concerning a bond between [Mother and Father] and each child is at variance. [Crouse] opines that there are no bonds. [Gelles] says as to [Mother] that there is a bond between [Mother] and the [C]hildren. [The trial court], based upon the length of time the [C]hildren have been in placement and the interaction of the parents and [C]hildren as described by [Crouse], finds that there are no bonds. Further, the [trial court] finds that there are strong bonds between the foster parent and the [C]hildren, all three of whom live together in placement. These three [C]hildren are doing well in placement.

20. In terminating the parental rights of these parents, [the trial court] has found that this will best meet the

> developmental, physical, and emotional needs and welfare
> of the [C]hildren.

Trial Court Order, 9/24/19, at 12-15.

Pursuant to section 2511(a)(1), the trial court considered testimony establishing that, for at least the six months preceding the filing of the termination Petition, Mother displayed a settled purpose to relinquish her parental rights and/or refused or failed to perform her parental duties with regard to the Children. The trial court also considered Mother's explanation for her conduct, consisting of her running from the law and her history of incarcerations, and her substance abuse. The trial court considered Mother's post-abandonment contact with the Children, consisting of phone calls and attending visits with the Children only when she was not incarcerated or had active outstanding warrants. N.T., 9/6/19, at 63-64, 120. The trial court considered that Mother sent letters and cards to the Children when she was incarcerated. Id. at 47, 113-14.

With regard to section 2511(a)(2), the trial court found that Mother's lack of progress with her court-ordered goals, and her incarcerations and time spent in drug rehabilitation facilities had caused the Children to be without essential parental care, control or subsistence necessary for their physical or mental well-being. The trial court had ordered Mother to attend her mental health, as well as drug and alcohol, assessments, and to comply with recommendations throughout the history of the case, but she failed to successfully do so. Id. at 34-35. The trial court credited the testimony of

Crouse, who testified that Mother was unable to provide a safe, stable home for the Children, or stable employment to provide for the Children. Id. The trial court also considered the testimony of Gelles, who testified that, although the Children and Mother love each other, termination was in the best interest of the Children because of Mother's inability to care for the Children, and Mother's lack of progress in demonstrating an ability to care for them. Id. at 73-74. Accordingly, the trial court's determination that CYS satisfied the requirements of section 2511(a)(1) and (2) is supported by competent evidence in the record. In re Adoption of S.P., 47 A.3d at 826-27; In re: T.S.M., 71 A.3d at 267.

Moreover, the trial court also considered the effect of termination of Mother's parental rights on the Children pursuant to section 2511(b). The trial court found that the termination of Mother's parental rights would have no negative effect on the Children based on Mother's failure to address the Childrens' needs, welfare, and best interests while the Children had been in foster care. See N.T., 9/6/19, at 29. The trial court credited Crouse's testimony that, based on her observations of the Children, the Children have bonded with their foster mother and foster mother's family; the Children are not visibly upset when visits with their parents would end; the Children are not bonded to Mother; and that termination would not cause the Children emotional harm, but would instead promote their emotional, physical, and developmental needs and welfare. Id. at 30-36, 39, 47, 58-60. Further, the

trial court credited Gelles's testimony, wherein he stated his belief that the Children would not be emotionally harmed by termination, despite the mutual love between Children and Mother, considering the Childrens' level of bonding and comfort with the foster parent. Id. at 73-75.

After a careful review, we conclude that competent evidence in the record supports the trial court's factual findings regarding section 2511(a)(1), (2), and (b), and its conclusions are not the result of an error of law or an abuse of discretion. See In re Adoption of S.P., 47 A.3d at 826-27; In re: T.S.M., 71 A.3d at 267. We therefore affirm the Order terminating Mother's parental rights with regard to the Children under section 2511(a)(1), (2), and (b).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/11/2020